**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
TERESA RECUPERO             :      Civ. No. 3:18CV01413(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,             :
COMMISSIONER, SOCIAL         :
SECURITY ADMINISTRATION[1]  :      June 13, 2019
                             :
-----------------------------x
```

## <u>RULING ON CROSS MOTIONS</u>

Plaintiff Teresa Recupero ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff has moved for an order reversing the Commissioner's decision. [Doc. #19]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #21].

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #19]** is **GRANTED**, to the extent she seeks a remand for further administrative

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. <u>See</u> Fed. R. Civ. P 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **DENIED**.

## I.   <u>PROCEDURAL HISTORY</u>[2]

Plaintiff filed an application for DIB on February 19, 2016, alleging disability beginning November 1, 2015. <u>See</u> Certified Transcript of the Administrative Record, Doc. #14, compiled on October 2, 2018, (hereinafter "Tr.") at 200-03. Plaintiff's application was denied initially on June 9, 2016, <u>see</u> Tr. 109-12, and upon reconsideration on September 22, 2016. <u>See</u> Tr. 114-21.

On December 12, 2017, plaintiff, represented by Attorney Rebecca Bodner, appeared and testified at a hearing before Administrative Law Judge ("ALJ") John Aletta. <u>See generally</u> Tr. 28-74. Vocational Expert ("VE") Dennis King appeared and testified by telephone at the administrative hearing. <u>See</u> Tr. 62-69; <u>see also</u> Tr. 310-17. Licensed Clinical Social Worker Kathleen Douglas also appeared and testified at this hearing. <u>See</u> Tr. 70-73. On February 23, 2018, the ALJ issued an unfavorable decision. <u>See</u> Tr. 7-27. On June 18, 2018, the Appeals Council denied plaintiff's request for review, thereby

---

[2] Plaintiff filed a Statement of Facts with her motion and supporting memorandum, <u>see</u> Doc. #19-1, to which defendant filed a response and Supplemental Statement of Facts, <u>see</u> Doc. #21-1 at 2-7.

making the ALJ's February 23, 2018, decision the final decision of the Commissioner. See Tr. 1-4. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse the Commissioner's decision. [Doc. #19]. On appeal, plaintiff argues:

1. The ALJ failed to follow the treating physician rule;

2. The Residual Functional Capacity determination ("RFC") is not supported by substantial evidence;

3. The ALJ failed to properly develop the administrative record; and

4. The ALJ's finding that plaintiff could perform past relevant work as an office clerk is not supported by substantial evidence.

See generally Doc. #19-2. For the reasons stated below, the Court finds that the ALJ failed to properly consider the testimony of Licensed Clinical Social Worker Kathleen Douglas and failed to follow the treating physician rule.

## II.   **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether

the determination is supported by substantial evidence. See
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation
omitted). Substantial evidence is evidence that a reasonable
mind would accept as adequate to support a conclusion; it is
more than a "mere scintilla." Richardson v. Perales, 402 U.S.
389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305
U.S. 197, 229 (1938)). The reviewing court's responsibility is
to ensure that a claim has been fairly evaluated by the ALJ. See
Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation
omitted).

     The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to
apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d
33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d
Cir. 1999))). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he

is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given [her] residual functional capacity." Gonzalez ex rel.

Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The RFC is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

**IV.  THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled from November 1, 2015, through the date of his decision. See Tr. 11, Tr. 22. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2015. See Tr. 12. At step two, the ALJ found

plaintiff had the severe impairments of "obesity, degenerative joint disease of the knees, degenerative disc disease of the cervical spine, diabetes with neurological complication, depression and anxiety[.]" Tr. 13. The ALJ found plaintiff's "sleep apnea, hypertension, mild lumbar degenerative disc disease, lesion of right plantar nerve, hammer toes, hallux valgus of both feet, metatarsalgia of the right foot, artherosclerosis of aorta and bilateral trochanteric enthosopathy of the hips[]" to be non-severe impairments. Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 13-16. In making that determination, the ALJ specifically considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.06 (anxiety related disorders). See Tr. 13-16. Additionally, although "[t]here are no Listing criteria in Appendix 1 specific to the evaluation of diabetic impairments[,]" the ALJ "considered any resulting complications and/or limitations that might stem from [plaintiff's] diabetes" under various other listings. Tr. 13. Before moving on to step four, the ALJ determined that plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b)
except she can climb ramps and stairs occasionally,
never climb ladders, ropes, or scaffolds, balance
frequently, stoop occasionally, kneel occasionally,
crouch occasionally, crawl occasionally. She can never
work at unprotected heights, and must avoid concentrated
exposure to working with moving mechanical parts. She
can perform simple, routine tasks but not at a strict
production rate pace and can carry out simple, routine
instructions. She can tolerate occasional changes in her
work setting and work procedures.

Tr. 16. At step four, the ALJ concluded: "The [plaintiff] is

capable of performing past relevant work as an office clerk.

This work does not require the performance of work-related

activities precluded by the [plaintiff's] residual functional

capacity (20 CFR 404.1565)." Tr. 21. Thus, the ALJ determined

that plaintiff "has not been under a disability, as defined in

the Social Security Act, from November 1, 2015, through the date

of" his decision. Tr. 22.

## V.  **DISCUSSION**

Plaintiff raises several arguments in support of remand,

the most compelling of which are that the ALJ failed to consider

the testimony of Licensed Clinical Social Worker ("LCSW")

Kathleen Douglas, and failed to follow the treating physician

rule. The Court addresses each argument in turn.

### A.  Failure to Consider Testimony Of LCSW Douglas

Plaintiff asserts that the ALJ's failure to discuss the

testimony of LCSW Douglas was "both puzzling and prejudicial[]"

"given the lengthy, intensive work Ms. Douglas performed with Ms. Recupero[.]" Doc. #19-2 at 16 (footnote omitted). Defendant's response is threefold: (1) the "ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered[;]" (2) LCSW Douglas "did not treat Plaintiff or provide any therapy services[]" and therefore "her testimony was of little evidentiary value[;]" and (3) LCSW Douglas worked at the same facility as plaintiff's psychiatrist Dr. Briana Komar, whose opinion was before the ALJ, and thus, any purported error is harmless. Doc. #21-1 at 16-17.

"While the ALJ need not reconcile every conflicting shred of medical testimony, he must discuss the relevant evidence and factors crucial to the overall determination with sufficient specificity to enable reviewing courts to decide whether the determination is supported by substantial evidence." Barreto ex rel. Rivas v. Barnhart, No. 02CV4462(LTS), 2004 WL 1672789, at *3 (S.D.N.Y. July 27, 2004) (internal citations and quotation marks omitted). "[T]he ALJ is required to set forth not only an expression of the evidence which []he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not

credited or simply ignored." <u>Manning v. Astrue</u>, No. 5:11CV253(JMC), 2012 WL 4127643, at *7 (D. Vt. Aug. 17, 2012) (citation and internal quotation marks omitted) (emphases removed), <u>report and recommendation adopted</u>, 2012 WL 4127641 (Sept. 19, 2012).

"[A]n ALJ is free to accept or reject testimony like that given by a lay witness." <u>Burden v. Astrue</u>, 588 F. Supp. 2d 269, 278 (D. Conn. 2008) (quoting <u>Williams</u>, 859 F.2d at 255).[3] However, "[a] finding that the witness is not credible must ... be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Burden</u>, 588 F. Supp. 2d at 278. Thus, "[t]he failure to make credibility findings regarding the lay witness's <u>critical</u> testimony fatally undermines the ... argument that there is substantial evidence adequate to support

---

[3] Although the Court treats LCSW Douglas's testimony as that of a lay witness, there is an argument to be made that the ALJ should have considered this testimony as an opinion from a non-acceptable medical source or nonmedical source. <u>See</u> 20 C.F.R. §404.1527(f)(1). Opinions from such sources, including ones from licensed clinical social workers, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence of file." Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *3. To the extent that LCSW Douglas's testimony may be considered an opinion from a non-acceptable medical source or nonmedical source, the ALJ's decision does not reflect that he appropriately considered her testimony under the applicable Regulation(s) and SSR(s). <u>See</u> 20 C.F.R. §§404.1527(f)(1), (2).

[the ALJ's] conclusion that claimant is not under a disability."
Id. (quoting Williams, 859 F.2d at 255).

Although LCSW Douglas testified at the administrative hearing, see Tr. 70-72, the ALJ made no mention of that testimony in his decision. Notably, LCSW Douglas testified regarding her nearly two-year relationship with plaintiff, during which she met with plaintiff "[a]t lease once a month; sometimes once every two weeks[]"; her observations as to plaintiff's ability to maintain concentration and focus; and plaintiff's thought process. See Tr. 70-71. LCSW Douglas's testimony was largely consistent with her case management notes. See, e.g., Tr. 485, Tr. 488, Tr. 489, Tr. 510, Tr. 511, Tr. 517.

Defendant dismisses LCSW Douglas's testimony as having "little evidentiary value" because she did not "provide any therapy services[.]" Doc. #21-1 at 17. It is well settled that "[a] reviewing court may not accept appellate counsel's post hoc rationalizations for agency action." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation and internal quotation marks omitted). Defendant's argument attempts to fill gaps in the ALJ's decision by suggesting that the ALJ assigned, or would have assigned, little evidentiary weight to LCSW Douglas's testimony. However, because the ALJ did not address that

testimony in his decision, the Court is unable to glean what, if any, weight was afforded to LCSW Douglas's testimony.[4]

Although LCSW Douglas's testimony was brief, it was nonetheless significant and probative because it supports the conclusions set forth in the medical source statements of plaintiff's treating psychiatrists, Dr. Briana Komar and Dr. Steven Katz, to which the ALJ assigned "partial weight[.]" Tr. 20. In pertinent part, Dr. Komar opined that plaintiff was moderately to markedly impaired in her memory and ability to understand, and her ability to maintain sustained concentration and persistence. See Tr. 544. Similarly, Dr. Katz opined that plaintiff had reduced to limited ability in her task performance. See Tr. 436. Dr. Katz noted: "Reports difficulty focusing to read mail from businesses. Reports cognitive slowing and anxiety interfere with goal-directed activities." Id. LCSW Douglas's testimony supports those findings. See Tr. 70-71 ("[I]t is usually routine that I have to repeat instructions. And I additionally, have to clarify instructions repeatedly. ... She is extremely distracted. ... There's so many things that she feels she needs to do or remember, that it stops her

_____

[4] Regardless of the nature of the services LCSW Douglas provided to plaintiff, the record plainly reflects that LCSW Douglas met with plaintiff on a regular basis. Indeed, plaintiff's statement of material facts, to which defendant did not object, mentions LCSW Douglas eight times. See generally Doc. #19-1.

concentration in the moment. ... It negatively impacts her ability to complete our case management related tasks in a timely manner. ... I think that Teresa, the way she thinks, is problematic in getting tasks done in a timely manner.").

LCSW Douglas's testimony is also consistent with plaintiff's subjective statements concerning her ability to focus, concentrate, and complete tasks. See Tr. 46 ("I'm very slow. And I can't be productive enough. Like, you know, employers expect you to do a certain amount of work, and I'm too slow, so I can't keep up."); Tr. 53 ("I have problems in conversation, sometimes when I'm trying to say something, I can't recall a word even, that I want to use. Also I can't always remember things that have happened. ... Like I get distracted very easily, like I'll try to concentrate, but then I could get distracted, and then I lose my concentration.").

Other substantial evidence of record is also consistent with the testimony of both plaintiff and LCSW Douglas. See Tr. 553 (November 29, 2017, Staltaro Psychological Services Session Note reporting plaintiff's cognition as "Delayed/Impaired", "Tangential", and "Distractible"); Tr. 554 (November 22, 2017, Staltaro Psychological Services Session Note reporting plaintiff's cognition as "Distractible"); Tr. 555 (November 15, 2017, Staltaro Psychological Services Session Note reporting

plaintiff's cognition as "Delayed/Impaired" and "Distractible");
Tr. 556 (November 8, 2017, Staltaro Psychological Services
Session Note reporting plaintiff's cognition as
"Delayed/Impaired" and "Distractible"); Tr. 557 (November 1,
2017, Staltaro Psychological Services Session Note reporting
plaintiff's cognition as "Delayed/Impaired" and "Distractible");
Tr. 559 (October 18, 2017, Staltaro Psychological Services
Session Note reporting plaintiff's cognition as
"Delayed/Impaired" and "Distractible"); Tr. 562 (September 27,
2017, Staltaro Psychological Services Session Note reporting
plaintiff's cognition as "Delayed/Impaired" and "Distractible");
Tr. 566 (May 24, 2017, Staltaro Psychological Services
Diagnostic Assessment reporting plaintiff's cognition as
"Impaired", "Tangential", and "Distractible"); Tr. 466 (Bureau
of Rehabilitative Services ("BRS") Assessment: "While working,
Teresa did require reminders to remain focused on her tasks and
not others that were in the building. ... [T]he consumer could
become easily distracted by others around her and at times would
offer input into others conversations. At time this distraction
would cause the consumer to lose her place in the files or
forget the steps that she had already completed." (sic)).
Defendant does not appreciate the import of those consistencies
in his briefing.

Defendant also contends that the ALJ's failure to address LCSW Douglas's testimony would be harmless error because she "worked at the same facility as Dr. Komar, Plaintiff's psychiatrist, whose medical opinion was obtained and evaluated by the ALJ[]." Doc. #21-1 at 17 (citation omitted). That argument discounts the significance that LCSW Douglas's testimony would have in supporting the opinions of plaintiff's treating psychiatrists and plaintiff's subjective statements concerning plaintiff's ability to maintain concentration and complete tasks. If the ALJ did consider LCSW Douglas's testimony when assessing plaintiff's credibility or the opinions of plaintiff's treating psychiatrists, it is not apparent how that testimony factored into his assessment of said evidence. Indeed, the "court cannot tell if [that testimony] was not credited or simply ignored." Barreto, 2004 WL 1672789, at *4. Thus, the Court cannot find that the ALJ's error was harmless, or that "application of the correct legal principles to the record could lead to only one conclusion." Johnson, 817 F.2d at 986. Because LCSW Douglas's testimony was both probative and significant, the ALJ was required to set forth his credibility findings as to that testimony with specificity. See Burden, 588 F. Supp. 2d at 278; Barreto, 2004 WL 1672789, at *3. Here, he did not.

Therefore, the Court finds remand warranted so that the ALJ may articulate how he considered LCSW Douglas's testimony.

Although the Court could conclude its discussion here, it is nevertheless compelled to address the ALJ's erroneous consideration of the opinions of plaintiff's treating physicians. The Court addresses that issue next.

B.    Treating Physician Rule

Plaintiff contends that the ALJ failed to provide good reasons for discounting the opinions of plaintiff's treating physicians. See generally Doc. #19-2 at 1-10. Defendant responds that the ALJ provided good reasons for discounting the opinions of plaintiff's treating physicians, and that those reasons are supported by substantial evidence of record. See generally Doc. #21-1 at 9-14.

> "The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §404.1527(c). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory

diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §404.1527(c)(2).

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the treating source. See 20 C.F.R. §§404.1527(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

   1.  Dr. Lynn Yu

Plaintiff first takes issue with the weight assigned to the opinion of plaintiff's primary care physician, Dr. Lynn Yu. See Doc. #19-2 at 5.[5] Plaintiff contends that the "reasons provided

---

[5] The Court assumes that plaintiff's argument addresses the weight afforded to the October 2017 opinion authored by Dr. Yu

by the ALJ for dismissing the treating physician's opinions are insubstantial[.]" Id. Plaintiff asserts that the ALJ did not consider plaintiff's treating relationship with Dr. Yu, and also erroneously relied on one outlier examination to discount Dr. Yu's opinion. See id. Defendant responds that the ALJ provided "good reasons for giving this opinion little weight[]" by "explaining that the medical record did not support the assessments in this opinion," and because the "opinion was submitted on a checkbox form that cited only joint pain and cervical spine disc herniation in support of severe limitations[.]" Doc. #21-1 at 10.

With respect to Dr. Yu's 2017 opinion, the ALJ stated:

> I also afford little weight to the Medical Source Statement provided by Dr. Yu limiting the claimant to a less than sedentary work capacity. Exhibit 18F. The medical evidence does not support his limitations regarding the claimant's ability to lift, carry, reach, finger, feel and handle objects. Rather the medical evidence shows that the claimant has 4+/5 strength in the upper and lower extremities as well as normal fine finger movements bilaterally and good dexterity. Exhibit 10F.

Tr. 19 (sic). The ALJ's reasoning for giving little weight to the opinion of Dr. Yu, and defendant's justification for same, is confusing. First, contrary to what the ALJ found, Dr. Yu in fact opined that with respect to manipulative limitations,

_____

(Tr. 572-78), rather than Dr. Yu's July 8, 2015, letter (Tr. 591).

plaintiff was limited only in her ability to reach. See Tr. 575.

Dr. Yu checked "unlimited" as to plaintiff's ability to handle,

finger, and feel, and determined she could frequently perform

such activities. See id.[6] Thus, the medical evidence at least

supports that aspect of Dr. Yu's opinion. As to plaintiff's

ability to reach, Dr. Yu found plaintiff was limited in this

domain, and opined that she could never reach because of a

"herniated disc in cervical spine." Tr. 575. The record reflects

plaintiff's complaints of neck and shoulder pain both before and

during the relevant time period. See, e.g., Tr. 369, Tr. 381,

Tr. 460, Tr. 579, Tr. 596. Examinations revealed plaintiff's

reduced range of motion in her left shoulder, see Tr. 383, Tr.

598, and tenderness to palpation along plaintiff's paraspinal

muscles, see Tr. 461, Tr. 582. Another provider at UConn Health

noted that plaintiff "may ... have rotator cuff tendinopathy of

---

[6] It appears that Dr. Yu may have misread the form. The
instructions state that "[i]f there are manipulative limitations
described as 'limited', please check how often the individual
can do the following[.]" Tr. 575. Dr. Yu then identified that
plaintiff could handle, finger, and feel, "frequently" despite
having previously noted that plaintiff was unlimited in these
domains. Id. Regardless, to the extent that Dr. Yu's opinion
required clarification, the ALJ should have re-contacted Dr. Yu.
See Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 428
(S.D.N.Y. 2010) ("[I]f a physician's report is believed to be
insufficiently explained, lacking in support, or inconsistent
with the physician's other reports, the ALJ must seek
clarification and additional information from the physician, as
needed, to fill any clear gaps before rejecting the doctor's
opinion.").

the left shoulder[.]" Tr. 600. Objective medical evidence confirms plaintiff's cervical spine condition. See Tr. 421 (April 3, 2015, CT Scan of Neck reflecting "a prominent anterior bridging disc osteophyte complex at C4-C5."). Although the extreme limitation regarding plaintiff's ability to reach may not be entirely supported by the record, that one contradiction does not justify the ALJ's decision to discount the entirety of Dr. Yu's opinion. See Flagg v. Astrue, No. 5:11CV00458(LEK), 2012 WL 3886202, at *11 (N.D.N.Y. Sept. 6, 2012) ("[E]ven if Dr. Giaccio's medical opinion were contradicted by substantial evidence and were therefore not controlling, it still might be entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources." (citation and internal quotation marks omitted)).

Additionally, the ALJ cited exclusively to the consultative examiner's opinion as support for his decision to discount Dr. Yu's opinion. See Tr. 19 (citing Exhibit 10F). "The Second Circuit has repeatedly stated that when there are conflicting opinions between the treating and consulting sources, the consulting physician's opinions or report should be given limited weight." Fiedler v. Colvin, 54 F. Supp. 3d 205, 219 (E.D.N.Y. 2014) (citation and internal quotation marks

omitted)). In that regard, "consultative examinations are generally not accorded the same weight as examinations performed by a treating physician because consultative examinations 'are often brief, are generally performed without benefit or review of claimant's medical history and at best, only give a glimpse of the claimant on a single day.'" Flagg, 2012 WL 3886202, at *11 (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)). Accordingly, it was error for the ALJ to have discounted Dr. Yu's opinion simply because it was inconsistent with the consultative examiner's opinion.[7] Indeed, "the opinions of consultative examiners are not entitled to the same deference as opinions by treating physicians[.]" Pugh v. Comm'r of Soc. Sec., 351 F. Supp. 3d 305, 315 (W.D.N.Y. 2018).

Finally, defendant submits that the ALJ properly assigned little weight to Dr. Yu's opinion because her "opinion was

---

[7] As to plaintiff's ability to lift and carry, Dr. Yu opined that plaintiff could occasionally lift and/or carry ten pounds, and frequently lift and/or carry less than ten pounds. See Tr. 573. In discounting this aspect of Dr. Yu's opinion, the ALJ relied solely on the opinion of the consultative examiner which noted plaintiff had "4+/5 strength in the upper and lower extremities[.]" Tr. 19 (citing Exhibit 10F). Other evidence of record may support a more restrictive lifting limitation than that found by the ALJ, including the objective medical evidence reflecting that plaintiff "has advanced severe patellofemoral degenerative change with lateral position of the patella[]" of the right knee, and "advanced degenerative arthritis of the patellofemoral joint of the left knee." Tr. 718; see also Tr. 328-30.

submitted on a checkbox form that cited only joint pain and cervical spine disc herniation in support of severe limitations[.]" Doc. #21-1 at 10. However, that was not a reason given by the ALJ for discounting Dr. Yu's opinion and the Court cannot accept "appellate counsel's post hoc rationalizations for agency action." Snell, 177 F.3d at 134 (2d Cir. 1999) (citation and internal quotation marks omitted); accord Cottrell v. Colvin, 206 F. Supp. 3d 804, 809 (W.D.N.Y. 2016) ("[T]he Commissioner's argument fails because she may not substitute her own rationale when the ALJ failed to provide one.").[8]

Accordingly, for all of the above reasons, the Court finds that the ALJ failed to give "good reasons" for discounting Dr. Yu's opinion.

### 2. Dr. Tapas Bandyopadhyay

Plaintiff next asserts that the ALJ's consideration of Dr. Bandyopadhyay's statement concerning plaintiff's somnolence was also erroneous. See Doc. #19-2 at 5. In particular, plaintiff appears to assert that the ALJ erroneously evaluated plaintiff's

---

[8] Additionally, defendant's representation concerning the nature of Dr. Yu's opinion is not entirely accurate. Dr. Yu did not generally note "joint pain" in support of her opinion, but stated: "Multiple joint pains including neck, low back, hips, knees, ankles, feet." Tr. 575. Also attached to Dr. Yu's opinion is a Pain Questionnaire which further explained the nature of plaintiff's pain and how it affected plaintiff's functional abilities. See Tr. 577-78.

compliance with her BiPAP therapy. See id. Defendant responds

that the ALJ adequately considered Dr. Bandyopadhyay's

statement, and provided good reasons for assigning that

statement little weight. See Doc. #21-1 at 10-11.

In a May 9, 2017, treatment note, Dr. Bandyopadhyay

assessed plaintiff with "[d]aytime somnolence despite BiPAP" and

noted that plaintiff "may be a good candidate for disability

because of her severe somnolence, Depression and other issues

affecting ability to work[.]" Tr. 475 (sic). The ALJ assigned

"little weight" to that opinion because it

> does not provide a functional assessment of the
> claimant's abilities and limitations. Additionally, the
> issue of disability is one that is reserved to the
> Commissioner of the Social Security Administration.
> Moreover, the claimant is not always compliant with her
> BiPAP therapy so it is hard to determine whether her
> sleepiness is avoidable. Exhibit 14F, p. 27.
> Nonetheless, she was able to make it through a workday
> without any complaints of sleepiness when she underwent
> the work assessment with the Bureau of Rehabilitation
> Services. Exhibit 11F.

Tr. 19.

The record contains many references to plaintiff's daytime

somnolence despite her compliance with CPAP or BiPAP therapy.

See Tr. 340 (Dr. Bandyopadhyay's January 13, 2016, treatment

note: "[S]till has daytime somnolence[.] ... Compliant with

CPAP"); Tr. 337 (Dr. Bandyopadhyay's March 1, 2016, treatment

note: "[S]till has daytime somnolence[.] ... Compliant with

CPAP"); Tr. 473 (Dr. Bandyopadhyay's October 19, 2016, note: "She is compliant with BiPAP and apneas are controlled. She continues to have significant daytime somnolence possibly secondary to untreated Depression."); Tr. 474 (Dr. Bandyopadhyay's May 9, 2017, progress note: "Has not been able to work because of daytime somnolence, fatigue and depression. Compliant with BiPAP but has sleepiness despite it."); Tr. 348 (Dr. Bandyopadhyay's report that plaintiff's "compliance is good" with CPAP and medication).

Although plaintiff did report some non-compliance with her BiPAP, see Tr. 486, Tr. 508, Tr. 514, Tr. 522, it is not apparent that the ALJ considered Dr. Bandyopadhyay's treatment notes, which stated that plaintiff suffered from severe daytime somnolence despite her compliance with the BiPAP therapy. See Tr. 18. "The ALJ must not only develop the proof but carefully weigh it." Burgess, 537 F.3d at 129 (citation omitted). Here, it is not apparent that the ALJ carefully weighed, or adequately considered, the evidence supporting Dr. Bandyopadhyay's opinion. Instead, it appears that the ALJ impermissibly "substitute[d] his own expertise or view of the medical proof for the treating physician's opinion[]." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Thus, for the reasons stated, it is not clear from the ALJ's decision that he adequately considered Dr. Bandyopadhyay's statement regarding plaintiff's daytime somnolence.

### 3. *Dr. Briana Komar*

Plaintiff's treating psychiatrist, Dr. Briana Komar, submitted a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" dated October 13, 2017. See Tr. 544-45. Plaintiff submits that the ALJ failed to provide adequate reasons for discounting that opinion. See Doc. #19-2 at 3-4. Defendant responds that the ALJ's reasoning for discounting Dr. Komar's opinion "is supported by the record." Doc. #21-1 at 12.

With respect to Dr. Komar's opinion, the ALJ stated:

> I afford partial weight to the Medical Impairment Questionnaire proffered by Dr. Brian Kemars. Exhibit 16F. The length of the claimant's treatment relationship with Dr. Kemars is unclear. Additionally, he provided no explanation for his check box form. The social limitations, which he ascribes to the claimant, differ from her own testimony indicating that she gets along with others. It also conflicts with the claimant doing well with talking on the phones and handling customer service when she underwent the work assessment with the Bureau of Rehabilitation services. Exhibit 11F.

Tr. 20 (sic).

The ALJ's reasoning for discounting the opinion of Dr. Komar is again confusing. That opinion provided that plaintiff had <u>no</u> limitations in the domain of social functioning, except

that plaintiff was moderately limited in "[t]he ability to accept instructions and respond appropriately to criticism from supervisors." Tr. 545. Indeed, Dr. Komar's opinion is consistent with plaintiff's testimony that "she gets along with others[,]" and the BRS assessment that plaintiff did "well on the phones handling customer service[.]" Tr. 20. Dr. Komar in fact opined that plaintiff had <u>no</u> limitations in her abilities to: (1) "interact appropriately with the general public[;]" (2) "get along with coworkers or peers[;]" and (3) "maintain socially appropriate behavior[.]" Tr. 545. It was error for the ALJ to have discounted the entire opinion of Dr. Komar because <u>one</u> ascribed limitation was not necessarily supported by the record. Indeed, it is not apparent that the ALJ considered any of the other portions of Dr. Komar's opinion, but focused solely on the social limitations set forth therein.

Further, the ALJ does not appear to have considered that Dr. Komar's opinion is largely consistent with that of plaintiff's other treating psychiatrist, Dr. Steven Katz. <u>Compare</u> Tr. 544-46 (Dr. Komar's Opinion), <u>with</u> Tr. 433-37 (Dr. Katz's opinion). Like Dr. Komar, Dr. Katz opined that plaintiff had limited to reduced ability in the domain of task performance. <u>See</u> Tr. 436. The ALJ's failure to consider the consistency of these two opinions was also error.

Finally, the ALJ discounted Dr. Komar's opinion because it was set forth on a check box form with no explanation. "Trying to justify the rejection of Dr. [Komar's] otherwise relevant opinion based on the form on which it was rendered was error[.] If that ALJ felt that the form lacked sufficient narrative, the ALJ should have contacted the doctor and requested additional information[.]" <u>Gallagher v. Comm'r</u>, No. 17CV1270(HBS), 2019 WL 442450, at *4 (W.D.N.Y. Feb. 5, 2019) (internal citation and quotation marks omitted). Accordingly, the ALJ also did not adequately consider, or provide "good reasons" for discounting, the opinion of Dr. Komar.

In light of the above, the Court need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand the Commissioner shall address the other claims of error not discussed herein.

## VI.   <u>CONCLUSION</u>

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #19]** is **GRANTED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 13th day of June, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
